**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

RYAN O'DELL,                                          :
                                                      :
             Plaintiff,                   :   Civil Action No. 23-cv-6302
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
NECESSARY RETAIL REIT, INC.,                          :   **SECURITIES EXCHANGE ACT OF**
MICHAEL WEIL, LISA KABNICK, LESLIE                    :   **1934**
MICHELSON, STANLEY PERLA, and                         :
EDWARD RENDELL,                                       :   **JURY TRIAL DEMANDED**
                                                      :
             Defendants.                  :
---------------------------------------------------------   :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Necessary Retail, Inc. ("Necessary

Retail or the "Company") the members Necessary Retail's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants"), for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Necessary Retail and Global Net Lease,

Inc. and affiliates ("Global Net Lease").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on July 6, 2023 with the United States Securities and

Exchange Commission ("SEC"), as amended on July 17, 2023, and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Global Net Lease will acquire Necessary Retail in an all-stock transaction through each of their subsidiaries (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 2, 2023 (the "Merger Agreement"), each Necessary Retail stockholder will receive the right to receive 0.670 shares of Global Net Lease common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Necessary Retail's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Truist Securities, Inc. ("Truist") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote on September 8, 2023 so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Necessary Retail's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Necessary Retail stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Michael Weil has served as a member of the Board since 2015 and is the Chairman of the Board and the President and Chief Executive Officer of the Company.

11.     Individual Defendant Lisa Kabnick has served as a member of the Board since August 2015 and is the Lead Independent Director.

12.     Individual Defendant Leslie Michelson has served as a member of the Board since February 2017.

13.     Individual Defendant Stanley Perla has served as a member of the Board since April 2013.

14.     Individual Defendant Edward Rendell has served as a member of the Board since February 2017.

15.     Defendant Necessary Retail is a Maryland corporation and maintains its principal offices at 650 Fifth Avenue, 30th Floor, New York, NY 10019.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "RTL."

16.     The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

18.     Necessary Retail is the preeminent publicly traded real estate investment trust (REIT) focused "Where America Shops". Necessary Retail acquires and manages a diversified portfolio of primarily necessity-based retail single tenant and open-air shopping center properties in the U.S.

19.     On May 23, 2023, the Company and Global Net Lease jointly announced the Proposed Transaction:

> NEW YORK, May 23, 2023 /PRNewswire/ -- Global Net Lease Inc. (NYSE: GNL, "GNL") and The Necessity Retail REIT Inc. (NASDAQ: RTL, "RTL") announced today that they have entered into a definitive merger agreement (the "Merger Agreement"), under which GNL will acquire RTL in an all-stock transaction (the "Merger"). GNL and RTL have also entered into a definitive agreement that will result in the combined entity becoming internally managed, with the external asset and property management functions currently performed by affiliates of AR Global, LLC (the "External Manager") being internalized (the "Internalization," together with the Merger, the "Transactions"). The combined internally managed company, which will operate as

4

Global Net Lease ("GNL Post-closing"), is expected to own and manage over 1,350 properties and have an aggregate real estate asset value of approximately $9.6 billion at the closing of the Transactions.

GNL Post-closing will also adopt enhanced corporate governance practices. In connection with the close of the Transactions, GNL Post-closing will opt out of the classified board provision of the Maryland Unsolicited Takeovers Act **("MUTA")**, declassify its Board of Directors, repeal the Company's Stockholder Rights Plan (commonly referred to in the industry as a "poison pill"), and amend bylaws that currently require up to two board members to be "managing directors." The Internalization is projected to generate approximately $54 million in annual cash savings and the Merger is projected to generate approximately $21 million in annual cash savings realized within 12 months of transaction close, totaling approximately $75 million in expected annual savings.

The Transactions were unanimously recommended by the Special Committees of the Boards of Directors of both GNL and RTL, comprised of independent directors, and approved by the full Boards of Directors. The Transactions are expected to close in the third quarter of 2023, subject to the satisfaction of closing conditions and approval by the stockholders of GNL and RTL.

P. Sue Perrotty, Chair of the GNL Board of Directors, said, "The merger of Global Net Lease and The Necessity Retail REIT is an exceptional opportunity to build a premier global net lease portfolio with very attractive future prospects. GNL Post-closing's enhanced corporate governance is highlighted by a majority-independent, declassified Board, as well as other enhancements that we are proud to institute. Combined with the internalization of management, we are realizing significant cost savings to our stockholders. I am honored to have the opportunity to lead an experienced and diverse group that is dedicated to building the long-term value of GNL."

**Summary of the Merger's Strategic Benefits**

The Merger is expected to create several operational and financial benefits for GNL Post-closing, including:

- **Immediately Accretive:** The Transactions are expected to be more than 9% accretive in Q4'23 relative to GNL's Q1'23 adjusted funds from operations ("AFFO") per share on an annualized basis.

- **Reduced Leverage:** Net debt to annualized adjusted EBITDA is expected to be reduced from 8.3x for GNL in Q1'23 and 9.6x for RTL in Q1'23 to an estimated 7.6x in Q4'23 for GNL Post-closing.

- **Significantly Increased Size, Prominence, and Scale:** Based on portfolios as of March 31, 2023, the Merger will create the third largest publicly traded net lease REIT with a global presence. GNL Post-closing will achieve greater diversity by geography, asset type, tenant, and industry, spanning industrial, retail, and office assets across North America and Europe, allowing for greater balance sheet flexibility and the ability to grow and optimize the portfolio. As a larger entity, GNL post-closing is expected to have access to larger asset and portfolio acquisitions with reduced concentration and integration risk and expected to have greater access to capital. GNL Post-closing's portfolio is anticipated to consist of 1,356 properties in 49 different states and 11 different countries, and top 10 tenant concentration is expected to be 19.2% of straight-line rent.

- **Substantial Corporate Synergies and Cost Savings:** The combination of GNL and RTL is expected to create a more efficient and competitive platform through the integration of adjacent best practices and reduction of equivalent functions, including corporate consolidation, public company cost savings, and elimination of other duplicative services. Annual run-rate cost savings are projected to be approximately $21 million realized within 12 months of the close of the Transactions.

- **Attractive Dividend:** GNL expects that, post closing, the GNL Post-closing Board will establish a new dividend policy of paying a quarterly dividend equal to $0.354 per share ($1.42 per share, annualized). Q4'23 AFFO expected to be $0.42 per share ($1.68 per share, annualized).

**Summary of the Internalization Transaction's Strategic Benefits**

The Internalization is expected to enhance corporate governance, as well as provide a number of operational and financial benefits, including:

- **Substantial Cost Savings:** The Internalization is projected to result in annual cash savings of approximately $54 million through elimination of the asset management fees, property management fees, incentive fees, equity issuance fees, and reimbursable expenses

currently payable to the External Manager, net of internalized employee compensation, rent and overhead, and excluding the one-time costs associated with the Transactions.

- **Simplified Company Structure:** The Internalization is expected to simplify GNL Post-closing's structure through the unification of all investment activities, corporate operations, and resources under a single, transparent organization. Internalizing management will provide GNL Post-closing control over key functions that are critical to both the growth of its business and maximizing stockholder value.

- **Valuation:** It is anticipated that there is significant potential for trading multiple expansion as investors recognize the value created through the Transactions, as internally managed peers have historically traded at significantly higher multiples than externally managed REITs.

**Key Corporate Governance Updates**

GNL Post-closing is dedicated to enhancing its corporate governance by committing to the following actions substantially concurrently with the close of the Transactions:

- **The Board of Directors of GNL Post-closing intends to opt out of the classified board provision of MUTA under the terms of the Merger Agreement.**

- **Declassify its Board of Directors, so that seven of the nine directors would stand for election to annual terms at the 2024 annual meeting of stockholders, and all nine directors would stand for election to annual terms at the 2025 annual meeting.**

- **Repeal Company's Stockholder Rights Plan (commonly referred to in the industry as a 'poison pill').**

- **Amend bylaws to delete the requirement that up to two board members to be "managing directors."**

**Company Leadership**

GNL Post-closing will have a highly diverse and experienced Board of Directors that has essential knowledge and familiarity to oversee

GNL Post-closing and ensure its long-term initiatives and performance. Upon completion of the Merger, the size of the GNL Board of Directors will be expanded to nine members, including the members of the current GNL Board and three independent RTL directors. GNL's current independent chairperson will remain in her position.

Current GNL Chief Executive Officer James Nelson and current RTL Chief Executive Officer Michael Weil will become Co-Chief Executive Officers. Mr. Weil will be the sole Chief Executive Officer upon Mr. Nelson's retirement in April 2024. Current GNL Chief Financial Officer Chris Masterson will remain in his position with GNL Post-closing.

**Transaction Terms**

Under terms of the Merger Agreement, RTL stockholders will receive 0.670 shares of GNL for each common share of RTL, which represents a total consideration of $7.08 per share based on share prices as of May 23, 2023 and a 35% premium to RTL's 30-day volume-weighted average price. Following closing of the Transactions, based on the stated fixed exchange ratio of 0.670, GNL stockholders are expected to own approximately 45% of GNL Post-closing, RTL stockholders are expected to own approximately 39%, and the owner of the former External Manager and its affiliates are expected to own up to 17%.

Pursuant to the internalization agreement, upfront consideration to the External Manager will consist of $325 million of GNL stock and $50 million in cash. In connection with the Transactions, the aggregate share ownership limit for the Company's charter will be reduced to 8.9%. In addition, GNL has granted a waiver to the External Manager and certain owners thereof to own more than the 8.9% limit, effective at the closing of the Transactions. After giving effect to the Transactions, the External Manager and its affiliates are expected to own up to 17%, effective immediately upon closing of the Transactions.

The Merger Agreement provides RTL with a go-shop period of 30 days, during which the Special Committee of the RTL Board of Directors and its advisors may actively solicit alternative proposals from third parties, subject to certain limited exceptions. RTL will have the right to terminate its respective Merger Agreement with GNL to accept a superior proposal, subject to the terms and conditions of the Merger Agreement. There can be no assurance that this "go-shop" process will result in superior proposals, and RTL does not intend to disclose developments with respect to the

> solicitation process unless and until the Special Committee of their Board of Directors make a determination with respect to any potential superior proposal.
>
> GNL has made a presentation detailing the highlights of the proposed Transactions available at investors.globalnetlease.com.
>
> **Advisors**
>
> The GNL Special Committee, consisting entirely of independent directors, was advised by BMO Capital Markets Corp. as its exclusive financial advisor and Shapiro Sher as its legal counsel. The RTL Special Committee, consisting entirely of independent directors, was advised by Truist Securities as its exclusive financial advisor and Arnold & Porter Kaye Scholer LLP as its legal counsel. The External Manager was advised by Paul, Weiss, Rifkind, Wharton & Garrison LLP.

* * *

20.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Necessary Retail's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

21.     On July 17, 2023, Necessary Retail and Global Net Lease jointly filed the amended Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning

whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Truist in its analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Global Net Lease which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Global Net Lease and Necessary Retail prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Truist with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Truist. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23.     For the Global Net Lease Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2028: Adjusted  EBITDA, FFO, AFFO, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

24.     For the Global Net Lease and Necessary Retail Projections on a Combined Basis, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2028: Adjusted EBITDA, FFO, AFFO, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

25.     For the Necessary Retail Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2028: Adjusted EBITDA, FFO, AFFO, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26.     For the Global Net Lease and Necessary Retail Advisor Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric for fiscal years 2023 through 2028: Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

30.     With respect to Truist's _Discounted Cash Flow Analysis_ for Necessary Retail and Global Net Lease, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0% for Necessary Retail and 9.20% to 11.20% for Global Net Lease; (ii) the inputs and assumptions underlying the terminal capitalization rates of 7.15% to 7.65% for Necessary Retail and 6.40% to 6.90% for Global Net Lease.

31.     With respect to Truist's _Selected Companies Analysis_, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each company selected by Truist for the

analysis; (ii) the inputs and assumption underlying the selected ranges of 12.5x to 14.5x to

Necessary Retail's 2024E Adjusted EBITDA, 9.0x to 12.0x to Necessary Retail's 2024E FFO and

8.5x to 11.5x to Necessary Retail's 2025E FFO; and (iii) the inputs and assumptions underlying

the selected ranges of 13.0x to 15.0x to Global Net Lease's 2024E Adjusted EBITDA 11.0x to

14.0x to Global Net Lease's 2024E FFO and 10.5x to 13.5x to Global Net Lease's 2025E FFO.

32.     In sum, the omission of the above-referenced information renders statements in the

Registration Statement materially incomplete and misleading in contravention of the Exchange

Act.  Absent disclosure of the foregoing material information prior to the special stockholder

meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened

with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in

order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Registration Statement with the intention of soliciting

stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Registration Statement and the use of their name in the

Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in

recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material

facts necessary to make the statements made not misleading.  Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).  The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose

such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the

Registration Statement.  The preparation of a Registration Statement by corporate insiders

containing materially false or misleading statements or omitting a material fact constitutes

negligence.  Defendants were negligent in choosing to omit material information from the

Registration Statement or failing to notice the material omissions in the Registration Statement

upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and

review of strategic alternatives.

38.     The misrepresentations and omissions in the Registration Statement are material to

Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

40.     The Individual Defendants acted as controlling persons of Necessary Retail within

the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions

as directors of Necessary Retail, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of Necessary Retail, including

the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of Necessary Retail, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement

at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

43.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result

of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 20, 2023                                      **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*